CHARLES B. CALLAWAY, APPELLANT, V. FARMERS UNION COOPERATIVE ASSOCIATION OF FAIRBURY, APPELLEE.

FILED OCTOBER 3, 1929. NO. 26680.

*J. A. Brunt* and *Heasty, Barnes & Rain,* for appellant.

*J. C. Hartigan* and *A. C. Pancoast, contra.*

Heard before GOSS, C. J., DEAN, THOMPSON, EBERLY and DAY, JJ., and CHASE and REDICK, District Judges.

EBERLY, J.

This is an action by a member of a farmers union cooperative association against the association to recover a "patronage dividend" alleged to be due and payable to plaintiff. After issue joined there was a trial to the jury, at the close of which the district court directed a verdict for the defendant, and from this verdict and the judgment of dismissal entered therein, plaintiff prosecutes this appeal.

Summarizing, the gist of plaintiff's petition is that he has been continuously a member of the defendant association since 1919 and is such at the present time; that he

transacted business with the defendant during the year
ending June, 1926, amounting to $24,000. "Plaintiff fur-
ther alleges that the by-laws provide for the holding of an
annual meeting of said association, and that said annual
meeting shall be held in June of each year; that a business
year of said association shall be from one annual meeting
to the next; that profits are prorated at the annual meet-
ing on business done during the year preceding the annual
meeting;" that at the annual meeting in June, 1926, a
"morata (patronage) dividend of 5 per cent. was earned
and declared to the stockholders;" that payment of this
dividend so declared has been wrongfully refused to him,
though due demand therefor has been made upon the de-
fendant association. To this petition the defendant de-
murred, for the reason that "the petition does not state
facts sufficient to constitute a cause of action." The de-
murrer was overruled. The defendant then answered by a
general denial.

It is to be noted that plaintiff in his petition does not
expressly, or by necessary implication, allege that the
"patronage dividend" for which he sued was declared by
the board of directors. This would seem to follow as the
necessary inference from the statements of his petition
relating thereto, in connection with the by-laws pleaded,
that "profits are prorated at the annual meeting (of de-
fendant association) on business done during the year pre-
ceding the annual meeting," and "that at the annual meet-
ing (of the stockholders) in June, 1926," a *pro rata* "divi-
dend of 5 per cent. was earned and declared to the stock-
holders on the value of business transacted with the cor-
poration for the business year."

It is the generally accepted doctrine that, in the absence
of other authority, it is the duty of the board of directors,
and not of the stockholders, to determine whether or not a
dividend shall be declared, but there is authority for the
proposition that stockholders may, however, act in con-
junction with directors in the declaration of dividends, or
the same result may be accomplished by the unanimous ac-

tion of all of the stockholders. 7 Thompson, Corporations (3d ed.) sec. 5273.

Giving the plaintiff's petition this liberal construction, what are the proofs in the record to sustain its allegations?

Plaintiff offered in evidence a copy of the minutes of a "called meeting" of the directors of the Farmers Union Cooperative Association held in Fairbury, on the 3d day of June, 1926, there being five members of the board present. This record was received over objection and disclosed that this board of directors at that meeting declared a "patronage dividend of 2/10 per cent. on live stock and 5 per cent. on grain and coal and merchandise." It will be noted that this cannot be termed an annual meeting; that the only annual meeting provided for by the by-laws, a copy of which is in evidence, is the "annual meeting" of the stockholders of the association. But plaintiff did introduce, as exhibit 5, the minutes of the annual meeting of the stockholders of this association held at the courthouse at Fairbury, Nebraska, June 16, 1926. The following constitutes a true copy thereof:

"Courthouse, Fairbury, Nebr. June 16, 1926.

"The stockholders of Farmers Co-op Ass'n met in their regular annual meeting on June 16, 1926. The meeting was called to order by the President Mr. F. S. Wells at 8:30 p. m. Minutes of the meeting of June 16, 1925, were read and approved. Manager report read and approved and showed a net gain to be $5,576.47.

"Omer Burd, Sec."

In connection with this subject the defendant introduced exhibit B, which is the minutes of a "called meeting" of the board of directors of the Farmers Union Cooperative Association held in Fairbury on the 16th day of June, 1926, at 9:30 a. m. A copy of these minutes is as follows:

"Farmers Union Co-op Ass'n, Fairbury, Nebr.

"At a called meeting of the board of directors of the Farmers Union Co-op Ass'n held in Fairbury on the 16th day of June, 1926, at 9:30 a. m. There being all members of the board of directors present. Meeting called to order

by Pres. Wells. On motion by W. C. Ware seconded by John Schoenrock that we reconsider and rescind the action of the board declaring a patronage dividend. Motion carried. Motion made that the earnings of the corporation now undistributed be carried to the surplus account of the corporation for the purpose of replacement and reserve. Motion carried.

"Omer Burd, Sec."

It is quite apparent that this evidence wholly fails to substantiate plaintiff's claim that in the June, 1926, annual meeting of the stockholders any dividend was declared and ordered to be paid either by the stockholders as such or the stockholders acting in conjunction with the board of directors. Indeed, the conclusion is inevitable that in the June 16, 1926, meeting the only business transacted was the convening of the stockholders; the calling of the meeting to order at 8:30 p. m.; the reading and approval of the minutes of the meeting of June 16, 1925; the reading and approval of the manager's report. We can only conclude from the absence of any reference to the subject of dividends in the minutes of this annual meeting of the stockholders heretofore set out, as well as a total lack of other competent evidence in the record establishing the affirmative, that there was no consideration of or action taken by the stockholders at this annual meeting on the subject of dividends whatever. It was a subject that did not enter into or form any part of the business transacted at that time. In view of these facts, the rule of law applicable to the situation before us is that "there can be no recovery if there is a material variance between the allegations and the proof. The *allegata* and *probata* must agree." *Elliott v. Carter White-Lead Co.*, 53 Neb. 458; *Cockins v. Bank of Alma*, 84 Neb. 624. And, as applied to the instant case, the plaintiff's petition cannot be sustained for want of proof. But should we liberalize the rule of construction applicable to plaintiff's petition to the extent that it might be held by implication to include an allegation that the dividend in suit was actually determined, ordered and declared by the board

of directors of defendant (a construction which, in view of the demurrer in the record, and the continued and consistent objection of defendant to the admission of plaintiff's evidence, would be unwarranted), still, there is no sufficient evidence in the record before us upon which a judgment in his favor could be sustained. As already appears, at a called meeting of the directors of the Farmers Union Cooperative Association held in Fairbury on the 3d day of June, 1926, there being five members only of the board present, a resolution was adopted to the effect "that we declare a patronage dividend of 2/10 per cent. on live stock and 5 per cent. on grain and coal and merchandise." But it also appears that at a called meeting of the board of directors of the Farmers Union Cooperative Association held in Fairbury on the 16th day of June, 1926, at 9:30 a. m., there being all members of the board of directors present, the action of this board of June 3d declaring a patronage dividend was reconsidered and rescinded and the earnings of the corporation then undistributed were directed to be carried to the surplus account of the corporation for the purpose of replacement and reserve. Following this last action by the board of directors, there was held the annual meeting of the stockholders of the Farmers Union Cooperative Association, which convened at 8:30 p. m. on the same day, approved the minutes of the previous annual meeting, heard and approved the manager's report, and adjourned.

Under the facts disclosed by the record, was the board of directors in its meeting on June 16, 1926, justified and empowered in reconsidering and rescinding the action of the same board taken on the 3d of June previously? This corporation had been in existence since 1919. Sections 1 and 2 of article 7 of the by-laws in force since the date of its organization provided:

"Section 1. Out of the proceeds of the business the operating expenses and the interest on indebtedness shall first be paid.

"Section 2. Out of the profits there shall be set aside each year as a sinking fund 10 per cent. until such surplus

equals 50 per cent. of the paid-in capital; said sum to be used in payment for improvements and new buildings, to make up losses, and for such other purposes as the board of directors shall determine."

A compliance with these provisions would have resulted in the possession of a surplus by the defendant association of 50 per cent. of its capital stock. But no amounts whatever, in obedience to the provisions of the by-laws quoted, had been, up to that time, set aside as therein directed. Query: Was the action of the board of directors on June 3d directing and declaring a dividend, under the existing circumstances, lawfully possible, in view of the provisions of section 2 above quoted? Waiving the question last propounded, we find the acts of rescission of the board of directors of June 16 have ample support and authority in the by-laws of the defendant association. This organization had by the terms of its constating act, at the time of its organization, ample authority conferred by statute to make by-laws "for the management of its affairs and for the distribution of its earnings." In the exercise of this power thus conferred, it adopted a by-law which provides that 20 per cent. of the members may ask that a proposed measure (of the board of directors) "be submitted to the stockholders for approval or rejection. Upon the receipt of a petition containing the proposed measure and signed by such per cent. it shall be the duty of the president to call a special meeting of the stockholders," and that "at such special meeting a majority vote shall be sufficient to approve or reject the measure submitted to the meeting for approval or rejection." Whatever the individual opinion of the attorneys in this case may be or the members of this court possess concerning the value of the principle of the initiative and referendum as a political proposition, these by-laws having been adopted contemporaneously with the organization of the association, and thus forming an essential part of the membership contract, good faith demands their enforcement unless their provisions are contrary to law or in excess of the power conferred upon the associa-

tion. We find no reason that would justify our failure to give the provisions quoted full force and effect in the instant case. If they are to be deemed in force and applicable, it would follow that the term "proposed measure" used therein properly construed, in view of its commonly accepted definition, would embrace the subjects of proposed declarations of dividends and the application and disposition of corporate earnings by the board of directors. Therefore, the action of the board on the 3d day of June being expressly subject to revision or veto may not be deemed final or binding upon the corporation until the reasonable time for referendum and review has expired. If this power of referendum exists, it is our duty to construe it so as to make it effective. This by-law also provides that "if the measure is approved it shall go into effect at once." This language implies that until the time for referendum has elapsed the action taken is not in effect. Therefore, no rights are or can be created by or through it against the corporation until this "reasonable time" has expired.

It would also follow that until the action taken by the board of directors is in effect or has created new rights against the corporation it may be rescinded or modified by the corporate agency involved. This was lawfully done in the instant case when the entire board of directors on the 16th of June reconsidered and rescinded their previous action declaring a patronage dividend and made other and different disposition of the corporate earnings of defendant.

It must also be remembered that this act of rescission was likewise subject to revision under the terms of the by-laws referred to, but, so far as the record discloses, no action thereon has been taken from which it might, if necessary, be inferred that the last action was in accord with the desires of the stockholders in whom the by-laws vest supreme control.

In view of the circumstances referred to, the action of the board of directors on June 3d not being final, but subject to revision and rejection, and having actually been rescinded within a reasonable time, the principle, which would apply

in cases where the board is the actual and final arbitrator in whom is vested the duty and discretion to determine whether or not a dividend shall be declared, has no application. So the conclusion follows that, even if the petition in the instant case be given the enlarged construction suggested, the facts would not entitle the plaintiff to the relief for which he prays.

The action of the trial court, therefore, in directing a verdict in favor of the defendant was correct and the judgment is

AFFIRMED.